IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   11-20034-01-CM |
| | ) | |
| MARTIN GASTELUM IBARRA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION TO RECONSIDER CREDIBILITY FINDINGS**

COMES NOW the United States of America, by and through David P. Zabel and D. Christopher Oakley, Assistant United States Attorneys, and hereby moves the Court to reconsider certain statements and/or findings set forth by the Court in its Memorandum and Order.  (Doc. 27.)  In support of this motion, the government offers the following:

Procedural History and Requested Relief

The defendant is charged in a two count indictment with possession with intent to distribute more than 500 grams of a mixture and substance containing methamphetamine, and aggravated re-entry of an illegal alien.  (Doc. 1.)  The defendant filed a motion to suppress evidence (Doc. 18) and the government filed a response to this motion (Doc. 20).  A suppression hearing was held on July 21, 2011. At this hearing, Trooper Jarett Ranieri testified extensively regarding his stop of a vehicle in which the defendant was a passenger (hereafter "suspect vehicle") on May 6, 2011.  Following the hearing, the defendant filed a Motion to Certify Question to Kansas Supreme Court, and Supplement to Motion to Suppress.  (Doc. 25.)  The government

filed a response to this motion.  (Doc. 26.)  The Court subsequently issued a written

Memorandum and Order.  (Doc. 27.)

The Court found the stop of the suspect vehicle was in violation of the Fourth

Amendment but ultimately declined to suppress the evidence recovered from the

suspect vehicle pursuant to the Derivative Evidence Doctrine.  (Doc. 27.)  The Court

did, however, make several statements that, for the reasons stated below, the

government is now asking the Court to reconsider.  The government is only requesting

the Court to reconsider its statements regarding Trooper Ranieri's credibility.  The

government is not asking the Court to change its ultimate rulings regarding the legality

of the stop or the denial of the defendant's motion to suppress.

Potential *Brady/Giglio* Implications of the Court's Credibility Statements

The Court's findings affect Trooper Ranieri far beyond the scope of this matter.

F.R.E. 608(b) states:

> Specific instances of the conduct of a witness, for the purpose of
> attacking or supporting the witness' character for truthfulness, other
> than conviction of crime as provided in rule 609, may not be proved
> by extrinsic evidence.  They may, however, in the discretion of the
> court, if probative of truthfulness or untruthfulness, be inquired into
> on cross-examination of the witness (1) concerning the witness'
> character for truthfulness or untruthfulness, or (2) concerning the
> character for truthfulness or untruthfulness of another witness as to
> which character the witness being cross-examined has testified.

Trial courts have held that findings of incredibility by other courts to be

"admissible to impeach the witness as allowed by 608(b)."  *See United States v.*

*Dawson*, 425 F.3d 389 (7th Cir. 2005), *United States v. Whitmore*, 359 F.3d 609 (D.C.

Cir. 2004).  Furthermore, the Due Process Clause requires the prosecution to disclose

to the defense information in its possession that is favorable and material to the

2

defense.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  This obligation extends to information which may not necessarily show that a particular defendant is not guilty, but could be used by the defense to impeach a prosecution witness.  *Giglio v. United States*, 405 U.S. 150, 153-154 (1972).

Because the Court's order from the suppression hearing arguably calls into question Trooper Ranieri's credibility, the prosecution could be required to disclose the Court's opinion to the defense in any criminal case in which Trooper Ranieri testifies, whether state or federal.  This, of course, has the additional effect of tarnishing Trooper Ranieri's reputation within the law enforcement and legal community.  While this may be warranted if the Court truly believed Trooper Ranieri testified untruthfully or otherwise lacked credibility, for the reasons stated herein, the government believes the Court's findings regarding credibility were caused, in part, by the government's failure to provide sufficient foundational information, and not because of misconduct by Trooper Ranieri.

The government believes the Court's statements regarding Trooper Ranieri's credibility were based, in large part, on the misconception that Trooper Ranieri claimed to employ two law enforcement standards/tactics that are not regularly employed by other law enforcement officers.  Specifically, the Court took issue with Trooper Ranieri's testimony that when deciding if a vehicle was following another vehicle "more closely than is reasonable and prudent" pursuant to K.S.A. § 8-1523, he employs a one car length for every ten miles per hour standard (hereafter "the standard").  (Doc. 27, pp. 5-6.)  The Court also questioned Trooper Ranieri's testimony that he commonly pulls alongside vehicles he plans to stop, prior to initiating a traffic stop, for officer safety

reasons (hereafter "the tactic"). (Id. at 6.)

The Court's concerns about Trooper Ranieri's credibility appear to be based on the Court's belief that the standard and the tactic are not commonly used by law enforcement officers. Not realizing the Court's concerns regarding Trooper Ranieri's testimony regarding the standard and the tactic, the government did not set forth for the Court, either in writing or orally at the suppression hearing, the testimony of other Kansas State Troopers who have testified under oath that they are trained in both the standard and the tactic, and that they regularly employ both when carrying out their duties. The government has set forth below cases which demonstrate the standard and the tactic are both regularly used by other troopers. Whether or not the Court agrees with the use of the standard or the tactic, in light of these cases, the government hopes the Court will reconsider its statements regarding Trooper Ranieri's credibility and, therefore, clarify that the Court is not making a lack of credibility finding pursuant to *Giglio*.

The Standard

1.      *Trooper Ranieri's testimony and the Court's credibility statements*

Trooper Ranieri testified he has been a trooper with the State of Kansas for eleven years. (Tr., p. 4.) He testified that the average car length is about 15 feet. (Id. at 7.) In addition, the following dialogue occurred between Trooper Ranieri and AUSA Zabel:

> Q.      Okay. So, if you're using 15 feet kind of as a - - the average car length, have you been taught anything in regard to how close one vehicle in car lengths can safely follow another vehicle as it relates to the speed of those two vehicles?

4

A.   Yes, I have.  We've use a - - I've used a general rule of one car length for every 10 miles an hour a vehicle is traveling.  If a vehicle's traveling 30 miles an hour, it would be - - should be required to be three car lengths back.  If a vehicle's traveling 70 miles per hour, the vehicle should be required to be seven mile - - or seven car lengths back.

Q.   Now, this general rule that you use, is it specifically your rule, Trooper Ranieri's rule, or is that a general rule of thumb that you were taught?

A.   It's a general rule of thumb that I was taught.

Q.   And to your knowledge, do other troopers follow that general rule of thumb as well?

A.   That's correct.

Id.

The Court acknowledged in footnote 2 of its opinion that Officer Ranieri had testified to this standard on at least one prior occasion.  (Doc. 27, p. 6, FN 2.)  However, the Court stated: "But the court does not find that prior consistent testimony bolsters his credibility on this issue."  (Id.)   The Court also stated: "Ultimately, the court finds such a standard implausible."  (Id.)  However, as set forth below in subsection "2" of this section, this standard is very workable and is actually more lenient than the two second rule.

2.   *Application and validity of the standard*

At first blush, the one car length per ten miles per hour of speed standard articulated by Trooper Ranieri seems to be more stringent than the two second rule, which the 10th Circuit Court of Appeals has accepted as consistent with K.S.A. § 8-1523.  *See, E.g., United States v. Nichols*, 374 F.3d 959, 965 (10th Cir. 2004) (while it did not institute a "two second rule" itself, the Court upheld the trooper's

5

"two-second rule of thumb" as compliant with K.S.A. 8 §-1523). It is obvious that the Court believed this to be true and that this belief contributed to the Court's credibility statements.  In footnote two of its Memorandum and Order (Doc. 27), the Court stated:

> The court recognizes that Officer Ranieri has testified to using this standard on at least one other occasion.  *See, e.g., United States v. Velazquez*, 494 F. Supp. 2d 1250, 1251 (K. Dan. 2007).  But the court does not find that prior consistent testimony bolsters his credibility on this issue.  If the court has misjudged his credibility, and Officer Ranieri does, indeed, apply a "one car length for every ten-miles-per-hour" standard, the court has serious concerns about the validity of this approach.

However, at a speed of 70 miles per hour (the approximate speed of the suspect vehicle), the two second rule[1] is much more strict than the standard (one car length per 10 miles per hour).  There are 5280 feet in a mile.  At 70 miles per hour a vehicle travels 36,9600 feet (70 times 5280).  Dividing 36,9600 by 3600 (the number of seconds in an hour) results in 102.67 feet traveled each second by a car driving 70 miles per hour.  Under the two second rule, a car traveling at 70 miles per hour will travel 205 feet in two seconds.  Since the average vehicle is approximately 15 feet, the two second rule requires 13.67 vehicle lengths (205 feet divided by 15 feet), a standard much more strict than the standard Trooper Ranieri testified to, which would require seven car lengths at 70 miles per hour.  So, contrary to what this Court may have

---

[1] As set forth above and in the government's initial response (Doc. 20, pp. 4-6), it is a misnomer to refer to a "two second *rule*" or a "two car length *rule*" because no black-line rule has been adopted by the 10th Circuit.  However, because these standards, which have been upheld by the 10th Circuit under normal driving conditions as in compliance with K.S.A. § 8-1523, are commonly referred to as "rule," the government will refer to them as such.

believed at the time of the hearing and its writing of its Memorandum and Order, the standard articulated by Trooper Ranieri is less stringent than the two second rule, which has been upheld by the 10th Circuit under normal driving conditions.

Immediately following footnote two, the Court stated: "Ultimately, the court finds such a standard implausible." (Doc. 27, p. 6.)  However, in light of the calculations set forth above, the Court should now see that the standard applied by Trooper Ranieri and other troopers is actually very workable, because it accounts for both speed and distance.  This standard accounts for the fact that the faster a vehicle is traveling, the more braking distance it needs.  In other words, the standard accounts for vehicles' speed.   The faster the vehicles' are traveling, the more distance between vehicles is required.   As previously pointed out above, the two second rule applied to vehicles traveling 70 miles per hour actually requires a significantly greater distance between the two vehicles.  Actually, at any speed, the two second rule will produce nearly twice the car lengths required as the one care length per ten miles per hour standard.  For instance, at thirty miles per hour, the two second rule results in 5.8 car lengths.  The standard results in three car lengths.  Therefore, given the two second rule has been approved by the Tenth Circuit under normal driving conditions, surely a standard requiring less distance between cars also comports with K.S.A. § 8-1523.

3. *Cases in support of Trooper Ranieri's testimony regarding the standard*

The government has found several cases in this district in which KHP troopers have testified about using the standard Trooper Ranieri testified to (one car length per ten miles per hour).  Many of these troopers have also testified that in their KHP training they were trained to apply the standard.  This testimony corroborates Trooper Ranieri's

7

testimony that the standard is used, not only by himself but by other troopers, and that

troopers are trained to apply the standard.  Relevant portions of the transcripts of this

testimony are attached to this motion.  (See attachments A, B, C, D, E.)

*United States v. Velazquez*, district court case no. 07-40019-JAR, is the case the

Court noted in footnote number two of its Memorandum and Order.  Consistent with his

testimony in the case at bar, Trooper Ranieri testified: "Safe following distance we use

is one car length per ten miles an hour.  Say the speed limit is 30 miles an hour, three

car lengths.  Speed limit 70 miles an hour, seven car lengths we use as safety." (Att. A,

p. 8.)  In a written opinion, Judge Robinson upheld this stop, stating:

> Trooper Ranieri then testified that as he was following, defendant
> changed lanes after passing a semi-truck, and that the lane change left
> only three car lengths in front of the truck. The trooper considered the
> lane change unsafe, although he did not hear nor see the truck apply its
> brakes or make any response to the lane change. He testified that a safe
> traveling distance between vehicles is one car length per ten miles per
> hour that the vehicle is traveling; because defendant was traveling at
> seventy miles per hour, a safe distance would be seven car lengths.
> Following this reasoning, the trooper believed a lane change that only left
> three car lengths would be unsafe when traveling at seventy miles per
> hour, and was, therefore, a violation of K.S.A. § 8-1522( a).  Trooper
> Ranieri testified that approximately seven years of experience in the
> Kansas Highway Patrol led him to his conclusion.

*Velazquez*, 494 F2d. Supp. 1250, 1251 (D. Kan. 2007).  In upholding the stop, Judge

Robinson found, "A safe following distance is one car length per every ten miles per

hour, which is seven car lengths in this case."  *Id.* at 1254.

In *United States v. Lopez-Guzman*, district court case no. 02-40133-SAC, KHP

Trooper Douglas Rule testified: "We recommend one car length for every ten mile an

hour, which would b e seven car lengths." (Att. B, pp. 12, 48.)  Trooper Rule also

testified that KHP troopers are taught to use both the two second rule and the standard

8

of one car length for every ten miles per hour.  (Att. B, p. 50.)  In finding the stop to be

lawful, Judge Crow stated:

> The testimony of Sergeant Rule regarding this issue was both credible
> and uncontradicted.  He testified that he was aware of this law at the time
> of the stop, and alternatively uses two general guidelines to determine
> whether a vehicle is following to closely: 1) the following vehicle should be
> one car length away for every 10 m.p.h. of speed it is traveling, e.g., 7 car
> lengths separating two vehicles traveling 70 m.p.h.; or 2) the following
> vehicle should pass a fixed object two seconds or more after the first
> vehicle passes that first object.

*Lopez-Guzman*, 246 F. Supp. 2d 1155, 1158 (D. Kan. 2003).

In *United States v. White et. al.*, district court case no. 05-40114-SAC, KHP

Trooper Andrew Dean testified that regarding two vehicles he saw traveling

approximately 70 miles per hour and that the following car was to close to the followed

car.  (Att. C, p. 29.)  When asked the standard he applied to make this determination,

Trooper Dean stated, "one car length for every ten miles per hour, so I would say seven

car lengths, approximately."  (Would be a safe following distance.)  (Id.)  When asked if

this standard was his own personal belief or something he learned in training, Trooper

Dean stated: "I think it's just from my training and experience, from what I've heard, and

that's kind of what I've always gone by."  He also acknowledged that the Kansas Driver

Handbook recommends drivers use a two second rule.  (Id.)  As noted previously in this

motion, at 70 miles per hour, the two second rule requires drivers to keep a distance of

approximately 13.68 vehicle lengths between their vehicle and the followed vehicle,

whereas the one car length per ten miles per hour standard requires drivers to keep a

distance of seven car lengths between their vehicle and the followed vehicle.  Judge

Crow found the stop was legal, stating:   "Trooper Dean's testimony is uncontradicted

and credible.  He testified that the relevant vehicles were traveling approximately 70 miles per hour, the he understood that for safety purposes there should be seven car lengths, or two seconds per vehicle, traveling at that speed . . ." *Id.* at 13.

In *United States v. Gutierrez*, district court case no. 09-40095-RDR, Trooper Christopher Nicholas was asked how he determines if a vehicle is following another vehicle to closely.  He stated: "Some people do it by car lengths.  I try and do it by trying to count between - - like, if they hit a center line on the road or, like, a mile marker. Once the first car hits it, you count, like, one thousand one, and the second car will hit that mark."  (Att. D, p. 7.)  This testimony further corroborates that there is more than one acceptable way a trained law enforcement officer can determine a safe following distance and that using car lengths, as Trooper Ranieri testified he uses (one car length for every ten miles per hour) is one of the standards used by trained law enforcement officers.  As pointed out above, at 70 miles per hour, the standard used by Trooper Ranieri is more lenient to the driver of the following vehicle than the two second standard used by some troopers, such as Trooper Nicholas.

*United States v. Mercado-Vargas*, 04-40148-RDR, is another case in which a KHP trooper, Trooper Jason Edie, discussed the two second rule and the one car length per ten miles an hour standard as two alternate ways to decide if a vehicle was following another vehicle to closely.  (Att. E., pp. 50-51).  In finding the stop lawful, Judge Rogers stated:

> [Trooper Edie] estimated that defendant's car was within two car lengths of the vehicle ahead of it and that both vehicles were traveling 70 miles per hour.  He also testified that the distance between the cars would be traveled in less than two seconds and that this violated his concept of what was reasonable and prudent.  Trooper Edie further testified that he

10

> recalled the safety guideline which directed that there be a car-length's distance between vehicles for every 10 miles per hour the vehicles are traveling. This measure of safety or prudent driving was also violated by the facts he observed when he first spotted defendant's vehicle.

*Id.* at 2.

The government acknowledges that on its face, the use of both the two second rule and the one car length per ten miles per hour standard appears inconsistent. However, as Judge Crow inferred in *Lopez-Guzman* and *White et. al.*, it really is not. The two second rule is simply more strict than the one car length per ten miles an hour standard. However, both have been upheld by courts as reasonable methods for law enforcement officers to determine, under normal driving conditions, whether there is reasonable suspicion that K.S.A. § 8-1523 is being violated. When troopers, such as Trooper Ranieri, employ the standard in lieu of the two second rule, they are giving drivers the benefit of the doubt. It is analogous to an officer deciding not to a pull a vehicle over for traveling 75 miles per hour in a 70 mile per hour speed zone.

The calculations and case law presented above demonstrate the following: (1) Trooper Ranieri does actually use the standard; (2) the standard is rationally tied to the purpose of K.S.A. § 8-1523; (3) other troopers also use this standard; (4) courts have recognized the validity of the standard; and, (5) the standard is more forgiving than the two second rule, which has also been recognized as valid by the courts. In light of this, the government requests that the Court reverse its statements relevant to this portion of Trooper Ranieri's testimony that suggests the Court found his testimony to lack credibility.

<u>The Tactic</u>

1.    *Trooper Ranieri's testimony and the Court's credibility statements*

Trooper Ranieri testified that, after observing the suspect vehicle following the vehicle in front of it to closely, he pulled alongside the vehicle prior to activating the emergency equipment on his patrol vehicle, and initiating the traffic stop.  (Tr., p. 13.) Specifically, the following dialogue occurred between Trooper Ranieri and AUSA Zabel:

> Q.    Can you describe what if anything you - - you did as you're catching up to the vehicles prior to activating your emergency equipment?
>
> A.    Prior to approaching the vehicle, I did pull up along side of the vehicle, and I do that for safety reason, I do that for seat belt compliance, check to see if and how many occupants are wearing their seat belts, if there is any unbuckled children under - - you know, jumping around in the seats.
>
> Q.    And you said it was an officer safety component to that?
>
> A.    That's correct.
>
> Q.    And specifically, what are you looking for?
>
> A.    So I can get a general - - identify how many people are in the vehicle for my safety.  If I don't feel comfortable, I'll have a - - call another officer over there to help me with the traffic stop.

(Id.)

Regarding this testimony, the Court stated in its Memorandum and Order:

> The court further found Officer Ranieri's testimony not credible regarding his reason for pulling up beside the green suburban before activating his lights.  Officer Ranieri testified that he looked at the occupants of the car for officer safety, but the court's observations of Officer Ranieri on the stand suggest otherwise.  While Officer Ranieri's subjective motive for pulling over a car is irrelevant, *Chavez*, 534 F.3d at 1344, the court's credibility determination calls into question whether he had a reasonable suspicion that the green suburban was violating a traffic law at all.

(Doc. 27, p. 6.)

Other than stating it observed Trooper Ranieri testify, the Court did not elaborate on why the Court found Trooper Ranieri's testimony not credible as to why he pulled along side the suspect vehicle prior to initiating the traffic stop.  However, in the Court's Memorandum and Order, this conclusion is made immediately following the Court's finding that Trooper Ranieri does not really apply a one car length per ten mile per hour standard and, regardless, the standard is "implausible."  (Doc. 27, pp. 5-6.)  It appears the Court's opinion regarding Trooper Ranieri's testimony about the standard significantly affected the Court's opinion of Trooper Ranieri's testimony about why he pulled alongside the suspect vehicle (also referred to in this response as "the tactic").  Based on what the government has presented in this motion regarding the standard, the government believes the Court will now have a different view of Trooper Ranieri's credibility.

2.    *Cases in support of Trooper Ranieri's testimony regarding the tactic*

Trooper Ranieri's statement that he pulled along side the suspect vehicle for both officer safety and to see if the occupants were wearing their seat belts is corroborated by the fact that his fellow KHP troopers have also testified that they employ this tactic.  Relevant portions of the transcripts of this testimony are attached to this motion.  (See attachments B, F, G.)

In *United States v. Lopez-Guzman*, district court case no. 02-40133-SAC, KHP Trooper Douglas Rule testified that he "routinely" pulls along side vehicles he is going to pull over prior to initiating the traffic stop in order to see if the occupants are wearing their seat belts.  (Att. B, pp. 52-53.)

In *United States v. Beltran-Lugo, et. al.,* district court case no. 05-10228-WEB, Trooper Rule[2] testified he pulled along side the suspect vehicle so he could see inside the passenger's compartment and to look at the rear wheel well on the driver's side of the vehicle.  (Att. F, p. 56.)

In *United States v. Nichols, et. al.,* district court case no. 02-40098-JAR, Trooper Michael R. Weigel testified he pulled along side the suspect vehicle when trying to determine if it was following another vehicle to closely and in order to determine if its occupants were wearing their seat belts.  (Att. G, p. 133.)

Other Kansas law enforcement agencies other than KHP utilize the tactic.  In *United States v. Mesa-Roche*, 288 F. Supp. 2d 1172 (D. Kan. 2003), Russell County Sheriff's Deputy Kelly Schneider testified it is a standard practice of his to pull along side a vehicle he intends to stop to determine the number of occupants of the car for purposes of officer safety.  *Id.* at 1176.

Further, numerous other Kansas law enforcement officers have testified that they perform the tactic.  *See United States v. Sanchez-Perez*, 2010 WL 2520651 (D. Kan. 6/23/10); *United States v. Lopez-Salazar*, 2006 WL 1675671 (D. Kan. 6/13/06); *United States v. Duque-Nava*, 315 F. Supp. 2d 1144 (D. Kan. 2004); *United States v. Alcaraz-Arellano*, 302 F. Supp. 2d 1217 (D. Kan. 2004); *United States v. Stokes*, 2003 WL 23145909 (D. Kan. 12/15/03); *United States v. Alcarez-Mora*, 246 F. Supp. 2d 1146 (D. Kan. 2003); *United States v. Ochoa*, 4 F. Supp. 2nd 1007 (D. Kan. 1998).

In light of this, the government requests that the Court reverse its statements

---

[2] This is the same trooper who testified *United States v. Lopez-Guzman*.

14

relevant to this portion of Trooper Ranieri's testimony that suggests the Court found his testimony to lack credibility.

WHEREFORE, the government requests the Court reconsider its statements in its Memorandum and Order (Doc. 27) regarding certain portions of Trooper Ranieri's testimony and make clear the Court is not making credibility findings that would require disclosure by the government pursuant to *Giglio*.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ *David P. Zabel*
David P. Zabel
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66106
David.Zabel@usdoj.gov

/s/ *D. Christopher Oakley*
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66106
Chris.Oakley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of January, 2012, I electronically filed the foregoing response with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *David P. Zabel*

15